

# The Attorney General of Texas

December 31, 1982

**MARK WHITE**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Andy Kupper
Hockley County Attorney
Hockley County Courthouse
Levelland, Texas    79336

Opinion No. MW-558

Re: Whether or not a city may
enact a curfew ordinance

Dear Mr. Kupper:

You have requested an opinion concerning the legality of a proposed juvenile curfew ordinance by a city in Texas. The ordinance is set forth below:

## SUB-MINORS' CURFEW ORDINANCE

Sec. _____.  Definitions.

In this ordinance the following definitions apply:

(a) ESTABLISHMENT. Any privately owned place of business carried on for a profit or any place of amusement or entertainment to which the public is invited;

(b) SUB-MINOR. Any person under the age of seventeen (17) years;

(c) OPERATOR. Any individual, firm, association, partnership or corporation operating, managing or conducting any establishment; and whenever used in any clause prescribing a penalty, the term 'operator' as applied to associations or partnerships shall include the members or partners thereof and as applied to corporations, shall include the officers thereof;

(d) PARENT. Any natural or adoptive parent of a sub-minor, a guardian, or any adult person, 21 years of age or over, responsible for the care and custody of a sub-minor;

(e) PUBLIC PLACE. Any public street, highway, road, alley, park, playground, wharf, dock, public building or vacant lot;

(f) REMAIN. To loiter, idle, wander, stroll or play in or upon, or park or cruise in or upon any vehicle.

Sec. _____. Unlawful Conduct of Sub-minor.

(a) No sub-minor shall remain in or upon any public place or any establishment between the hours of 11 o'clock p.m. and 6 o'clock a.m. of the following day, official city time, except that on Fridays and Saturdays and nights next preceding school holidays the hours shall be from 12 o'clock p.m. midnight to 6 o'clock a.m.

(b) The provisions of this section shall not apply to any sub-minor accompanied by a parent, or to a sub-minor upon an errand or other legitimate business directed by such sub-minor's parent, or to any sub-minor who is engaged in gainful lawful employment during the curfew hours.

Sec. _____. Unlawful Conduct of Parents.

(a) No parent shall knowingly permit any sub-minor to remain in or upon any public place or any establishment between the hours of 11 o'clock p.m. and 6 o'clock a.m. of the following day, official city time, except that on Fridays and Saturdays and nights next preceding school holidays the hours shall be from 12 o'clock p.m. midnight to 6 o'clock a.m.

Sec. _____. Unlawful Conduct of Owners or Operators of Establishments.

No operator of an establishment or their agents or employees shall knowingly permit any sub-minor to remain upon the premises of said establishment between the hours of 11 o'clock p.m. and 6 o'clock a.m. of the following day, official city time, except that on Fridays and Saturdays and nights next preceding school holidays the hours shall be from 12 o'clock p.m. midnight to 6 o'clock a.m.

Sec. _____. Enforcement and Penalties.

(a) Any police officer who finds a sub-minor violating any provisions of section ____ shall obtain information from such sub-minor as to his name and address, age and the name of his parent or parents. The sub-minor shall thereupon be instructed to proceed to his home forthwith. The information obtained from the sub-minor shall be forwarded to the chief of the juvenile division of the city police department, who shall cause a written notice to be mailed to the parent or parents of the sub-minor, advising of the violation of section _____.

(b) Any parent who shall violate any provision of section _____ after having received notice of a prior violation shall be fined upon conviction any sum not exceeding $200.00 for each violation.

(c) Any operator who shall violate any provision of section _____ shall be fined upon conviction any sum not exceeding $200.00 for each violation.

In regard to the contemplated enactment, you ask the following questions:

1. May a city in the state of Texas legally enact and enforce a curfew ordinance?

2. Is it legally permissible for parents to be fined because of curfew violations by their children?

3. Is it legally permissible to fine an operator of an establishment if he knowingly permits the sub-minor to remain upon his premises in violation of the curfew ordinance?

4. If the answer to question number 3 is 'no,' would it be legally permissible if a notice were sent to the operator upon a first violation, the notice containing the name, address and physical description of the sub-minor so as to put the operator on notice that the individual involved is a sub-minor? In this case no penalty would be assessed until a second violation involving the same sub-minor.

Although Texas courts have never held juvenile curfew ordinances to be unconstitutional per se, rigid tests are applied to determine their validity. The ordinance must refrain from unreasonably interfering with valid parental interests. McCollester v. City of Keene, 514 F. Supp. 1046 (D.N.H. 1981); see Stanley v. Illinois, 405 U.S. 645 (1972). The ordinance must protect the legitimate liberty and first amendment interests of juveniles affected. Johnson v. City of Opelousas, 658 F.2d 1065 (5th Cir. 1981); Ex parte McCarver, 46 S.W. 936 (Tex. Crim. App. 1898). Likewise, the right to interstate travel must be considered. Johnson v. Opelousas, supra, at 1072; Bykofsky v. Borough of Middletown, 401 F. Supp. 1242, 1270 (M.D. Pa. 1975), aff'd without published opinion, 535 F.2d 1245 (3rd Cir.), cert. denied, 429 U.S. 964 (1976). The enactment must not be broader than is necessary to achieve legitimate governmental purposes. Johnson v. City of Opelousas, supra; McCollester v. City of Keene, supra. Sufficient notice must be given to those subject to it of the conduct that is forbidden, so that the ordinance will withstand attacks claiming that it is unconstitutionally vague. McCollester v. City of Keene, supra; see Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972).

To be lawful, an ordinance must be reasonably specific as to its terms:

> [A legislative enactment] which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.

Connally v. General Construction Company, 269 U.S. 385, 391 (1926). The proposed enactment's exception for legitimate business and errands would appear to fall within this proscribed category. What one person may consider to be legitimate business, another may not. For instance, a social call on a friend could be prohibited in that it is not business in terms of commercial activity, nor is it an errand, even though such a visit would be protected under the first amendment. Aladdin's Castle, Inc. v. City of Mesquite, 630 F.2d 1029, 1038 (5th Cir. 1980), rev'd in part on other grounds, 451 U.S. 981 (1982). No guidelines are provided for making such a determination, giving rise to the possibility of discriminatory enforcement and failing to provide limits for the exercise of discretion by law enforcement officials. 630 F.2d at 1037.

The ordinance would also appear to be overbroad. A law is void on its face for overbreadth if it seeks to restrict activities that in ordinary circumstances constitute an exercise of protected expressive or associational rights. Johnson v. City of Opelousas, supra, at

1071; Aladdin's Castle, Inc. v. City of Mesquite, supra, at 1038 n. 13.

> The rights of locomotion, freedom of movement, to go where one pleases, and to use the public streets in a way that does not interfere with the personal liberty of others are basic values 'implicit in the concept of ordered liberty' protected by the due process clause of the fourteenth amendment. [Citations omitted].

Bykofsky v. Borough of Middletown, supra, at 1254.

Minors are entitled to constitutional protection, Bellotti v. Baird, 443 U.S. 622, 633 (1979), although their rights are not co-extensive with those of adults, Johnson v. City of Opelousas, supra, at 1072. Restrictions on minors that could not constitutionally be applied to adults may stand only if they serve a significant state interest not applicable to adults. Id. at 1073. Since age is not a suspect class, differential treatment on that basis is upheld if the challenged legislation has a legitimate public purpose, based on promotion of the public welfare, health, or safety, which bears a rational relation to that end. Aladdin's Castle, Inc. v. City of Mesquite, supra, at 1039. No analysis of equal protection questions is required here, however, since the proposed enactment has been held to be deficient under the stricter test imposed upon legislation that seeks to restrict fundamental liberty interests.

Other provisions of the ordinance require brief mention. No exception is made for interstate travel, which has been recognized to be a fundamental constitutional right. Sosna v. Iowa, 419 U.S. 393 (1975). The ordinance fails to accord this interest adequate protection. No distinction is made between emancipated minors and those who are unemancipated. Restricting the definition of parents to those twenty-one years of age and older would appear to be violative of the equal protection clause, since no rational reason is apparent for the distinction. Regardless of his age, a parent is charged with the responsibility for his child's well-being and is likewise entitled to the support of laws that assist him in that endeavor. Ginsberg v. New York, 390 U.S. 629, 639 (1968). Restrictions on the basis of age are valid only if a special circumstance of youth creates a unique danger to youth as a category and presents the state with an interest in regulating youth activities that is not present in regard to adults. Aladdin's Castle, Inc. v. City of Mesquite, supra, at 1042. No such special circumstance is present in this regulation.

Assuming that the substantive ordinance is valid, it would appear that parents could be punished for willfully allowing their children to violate curfew or for aiding their children to do so. This would

be similar to the principle behind section 4.24 of the Texas Education Code, dealing with thwarting the compulsory-attendance law, which subjects to a fine those parents who willfully fail to require their children to attend school. An exception is provided if the parent can show that he is unable to compel his child to attend school. Legislation imposing parental liability for unknowing conduct would pose due process problems. See McCollester v. City of Keene, supra, at 1051-53.

The proposed ordinance would subject operators of public establishments to punishment when minors are found within such establishments in violation of the curfew ordinance. Although authority on the legality of such a provision is scant, several due process problems appear. The operator is not informed how he is to determine the age of a minor. He would be required to determine whether any minors in his establishment are engaged in legitimate business or errands, and risk fine if his judgment differs from that of local law enforcement officials. The sending of a prior warning letter would not alleviate his dilemma. The operator would be responsbile for ascertaining the identity, as well as the age, of each young patron of his establishment in order to determine whether the prior offender is among them. The operator is not given any means by which to distinguish between two or more youngsters with the same name. Even though the youngster might previously have been in violation, the operator would still be required to determine the legitimacy of the youngster's business.

The proposed ordinance is distinguishable from the statute prohibiting the sale of alcohol to minors. Tex. Alco. Bev. Code §106.03. The distribution of alcohol has traditionally been subject to pervasive regulation. Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970). The duty thrust upon one who sells alcohol is relatively simple and is set forth in clear, unmistakable terms: he need only determine that the buyer's age is nineteen or over. The seller is not required to make judgments concerning the legitimacy of the minor's actions. Based on the prior determination that the "legitimate business" and "errands" exceptions are vague and fail to give notice of the restricted proscribed activity, to require a lay person to make such inquiries would be to impose an insurmountable constitutional burden.

The proposal to subject to liability operators of establishments who allow juveniles to remain in those establishments after curfew presents novel problems; the ordinances challenged in the cited cases merely prohibited youngsters from being outdoors, in streets, parks, or outdoor areas. See, e.g., Ex parte McCarver, supra; see also Ex parte Yelton, 298 S.W.2d 285 (Tex. Civ. App. - Beaumont 1957, no writ). Since no opinion was requested on this subject, none will be given.

## S U M M A R Y

Curfew ordinances are not unconstitutional per se; the proposed curfew ordinance, however, is unconstitutionally vague and overbroad.

Very truly yours,

M A R K   W H I T E
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Brenda Smith
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger
Brenda Smith